UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| HUBERT FRANK FORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-CV-063-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| PAMELA J. BONDI, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Attorney General Russell Coleman's Motion to Dismiss (hereinafter, "First Motion to Dismiss"), [R. 4], and Defendant Attorney General Russell Coleman's Motion to Dismiss the Plaintiff's First Amended Complaint (hereinafter, "Second Motion to Dismiss"), [R. 10]. After Defendant Russell Coleman (hereinafter, "Defendant") filed his First Motion to Dismiss, Plaintiff filed his First Amended Complaint, [R. 5]. Defendant Coleman then filed his Second Motion to Dismiss, [R. 10], to which Plaintiff responded, [R. 14], and Defendant replied, [R. 19]. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Court will deny Defendant's First Motion to Dismiss as moot and will grant Defendant's Second Motion to Dismiss.[1]

---

[1] Defendant Coleman admits Plaintiff's Second Amended Complaint "supersedes the earlier complaint for all purposes." [R. 10, p. 1 n.1 (citation and quotations omitted)]. The appropriate resolution for Defendant's First Motion to Dismiss is therefore its denial as moot. *See ComputerEase Software, Inc. v. Hemisphere Corp.*, No. 06–CV–247, 2007 WL 852103, \*1 (S.D. Ohio Mar. 19, 2007) ("Since the amended complaint replaces the original complaint, the motion to dismiss the original complaint is moot . . . ."); *Wright v. Memphis Light, Gas & Water Div.*, No. 11–3071– STA– TMP, 2012 WL 3683484, at \*1 (W.D. Tenn. Aug. 24, 2012); *see also Ky. Press Ass'n, Inc. v. Ky.*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005).

- 1 -

## I.    BACKGROUND

Plaintiff is a resident of Shelby County, Kentucky who, on July 18, 1997, pled guilty to Executing a Scheme to Defraud a Financial Institution in violation of 18 U.S.C. § 1344, for which he was sentenced to fifteen months in prison. [R. 5, ⁋⁋ 1, 14]; *see United States v. Hubert Frank Ford*, 5:97-CR-35-KSF (E.D. Ky. 1997). As a result of his conviction, Plaintiff is categorically prohibited from possessing a firearm under 18 U.S.C. § 922(g)(1) and K.R.S. § 527.040(1). *Id.* ⁋⁋ 17–18; *see* 18 U.S.C. § 922(g)(1) (prohibiting individuals convicted of crimes punishable by imprisonment for a term exceeding one year from possessing firearms or ammunition); K.R.S. § 527.040(1) (prohibiting convicted felons from "possess[ing], manufactur[ing], or transport[ing] a firearm"). Despite these prohibitions, Plaintiff asserts that "[i]t is [his] desire and intent to possess and own a firearm or firearms and, but for the prohibitions of 18 U.S.C. § 922(g)(1) and [K.R.S. §] 527.040(1), he would in fact possess and own a firearm or firearms." [R. 5, ⁋ 19].

Plaintiff claims that because he is not a "dangerous person," his right to possess and own a firearm is one protected by the Second Amendment to the Constitution of the United States, making 18 U.S.C. § 922(g)(1) and K.R.S. § 527.040(1) unconstitutional as applied to him. *Id.* ⁋⁋ 31–32. Plaintiff asserts that Defendant might enforce K.R.S. § 527.040(1) against him should he possess and own a firearm as he desires. *Id.* ⁋⁋ 19, 22–23. In support, Plaintiff points to Defendant's status as the "chief law officer of the Commonwealth of Kentucky," Defendant's authority to intervene or assist in the prosecution of criminal cases, including cases involving K.R.S. § 527.040(1), Defendant's "recent history of enforcement of [K.R.S. §] 527.040," and Defendant's recent appearances defending the constitutionality of K.R.S. § 527.040. *Id.* ⁋⁋ 22–23. Accordingly, Plaintiff seeks a declaration that K.R.S. § 527.040(1) is unconstitutional as applied

to him and an injunction preventing Attorney General Coleman and his successors from enforcing the statute against him. *Id.* at 12–13.

In his Second Motion to Dismiss, Defendant argues Plaintiff's claims against him should be dismissed because Plaintiff lacks standing, because Defendant is immune from suit, and because Plaintiff fails to allege facts sufficient to state a claim against Defendant. [R. 10, p. 1]. Plaintiff filed a Response disputing these arguments, [R. 14], and Defendant replied, [R. 19]. This matter is therefore ripe for review. For the reasons that follow, the Court will grant Defendant's Motion to Dismiss.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Rule 12(b)(1) permits a litigant to contest a court's subject matter jurisdiction over a case. Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction may be brought at any time during a proceeding. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). Motions to dismiss based on a lack of subject matter jurisdiction take two forms. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack merely questions the sufficiency of the pleadings set forth in the complaint to support jurisdiction. *Id.* On the other hand, a factual attack raises a factual controversy that challenges the predicate basis for jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A district court reviewing a facial attack "takes the allegations in the complaint as true," but where a party makes a factual attack, "no presumptive truthfulness applies to the allegations [in the complaint]." *Id.* (citing *Ohio Nat'l Life Ins.*, 922 F.3d at 325). Here, because Defendant appears to raise a facial attack on the Court's subject-matter jurisdiction, the Court will take the allegations in the First Amended Complaint as true as it considers its subject-matter jurisdiction to consider Plaintiff's claims. *See Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins.*, 922 F.3d at 325).

## III.   ANALYSIS

Defendant argues dismissal is proper for three reasons: (1) Plaintiff lacks standing; (2) Defendant is immune from suit under the United States Constitution's Eleventh Amendment;

and (3) Plaintiff fails to state a claim upon which relief can be granted. [R. 10, p. 1]. Because Defendant's first two arguments present threshold issues of jurisdiction, the Court will consider them first. *See Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016) ("Standing is a threshold question in every federal case . . . ."); *Ward v. Alt. Health Delivery Sys.*, 261 F.3d 624, 626 (6th Cir.2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction." (quoting *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1288 (5th Cir.1988))); *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) ("[The Sixth Circuit] treat[s] sovereign immunity as a 'jurisdictional bar,' that, 'once raised as a jurisdictional defect, must be decided before the merits.'" (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015))).

Where parties raise both standing arguments and sovereign immunity arguments, courts often consider immunity first, given that it is jurisdictional and addresses many facts also considered as part of the standing inquiry. *See, e.g., Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414–18; 1418–25 (6th Cir. 1996) (deciding the case on sovereign immunity grounds and only considering standing via separate concurrence); *Moravec v. Cameron*, No. 3:23-cv-00011-GFVT, 2023 WL 8241519, at *2–4 (E.D. Ky. Nov. 28, 2023) (finding the plaintiff failed to adequately alleged both standing and sovereign immunity). Here, the parties cite to the same arguments and caselaw in both the standing and sovereign immunity sections of their briefing. *See* [R. 10, pp. 3–9]; [R. 14, pp. 1–15]; [R. 19, pp. 1–13]. Therefore, because the order in which the Court addresses these issues is of no consequence, the Court will first turn to sovereign immunity.[2]

---

[2] Because the Court finds Plaintiff fails to establish the threshold issue of jurisdiction in two distinct ways—both regarding standing and sovereign immunity—the Court herein declines to address the merits of Plaintiff's First Amended Complaint against Defendant.

### A. Sovereign Immunity

Plaintiff sues Defendant in his official capacity as Attorney General of Kentucky. [R. 5, ℙ 3]. A lawsuit against a state official in his or her official capacity is not against the official, but rather against the official's office, and is accordingly treated as a lawsuit against the state itself. *Printz v. United States*, 521 U.S. 898, 930–31 (1997). The Eleventh Amendment immunizes states from suit, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment does not mention lawsuits that citizens bring against their *own* states, the Supreme Court closed this gap in *Edelman v. Jordan*, where it held that a state has Eleventh Amendment immunity from a lawsuit that its own citizen brings against it in federal court. 415 U.S. 651, 662–63 (1974). Therefore, regardless of the nature of the relief sought, the Eleventh Amendment insulates states from suit in federal court unless the state waives its immunity, the state unequivocally consents to the suit, or Congress unequivocally abrogates immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). Here, Plaintiff does not contend that Kentucky either has waived its immunity as it relates to this lawsuit or has consented to this lawsuit, nor does he contend that Congress has abrogated immunity as it relates to this lawsuit.

Rather, Plaintiff argues an exception to Eleventh Amendment immunity permits him to sue Defendant. *See* [R. 14, p. 15]. The *Ex parte Young* exception is grounded in the theory that unconstitutional actions by state officials are void from the start, meaning they cannot be authorized by the state; accordingly, the state official's actions are not viewed as the action of the state itself and, therefore, the state's Eleventh Amendment immunity does not apply to protect the official's actions. *See Pennhurst*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. at 160).

Specifically, the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity provides that state officials who are "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 U.S. 123, 156 (1908). In other words, the exception allows citizens to sue in federal court to challenge a state official's action where that action allegedly violates the United States constitution and where the citizen seeks prospective injunctive relief. *See Pennhurst*, 465 U.S. at 102–03.

The Sixth Circuit has noted that "this exception to sovereign immunity created in *Ex parte Young* has been read narrowly," *EMW*, 920 F.3d at 445, and it "'does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute,'" *id.* (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)). "There must be a 'realistic possibility the official will take legal or administrative actions against the plaintiff's interests.' . . . General enforcement authority," including that granted to the Kentucky Attorney General under K.R.S. § 15.020, "is insufficient." *Id.* (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)). Put differently, "[*Ex parte*] *Young* does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.' . . . And it requires more than a bare connection to administering a statute." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (citation omitted) (quoting *Ex parte Young*, 209 U.S. at 157).

Defendant's Second Motion to Dismiss contends that Plaintiff fails to allege sufficient facts for the *Ex parte Young* exception to Eleventh Amendment sovereign immunity to apply so as to permit suit against Defendant. *See* [R. 10, pp. 4–9]. As an initial matter, Defendant notes that he

- 7 -

has not waived his Eleventh Amendment immunity, meaning he is only a proper defendant if the *Ex parte Young* exception applies. *Id.* at 9. Then, Defendant argues the *Ex parte Young* exception does not apply for two reasons: (1) the Sixth Circuit has held the *Ex parte Young* exception does not apply to the Kentucky Attorney General where "the Kentucky legislature has charged local prosecutors with a statute's enforcement," meaning any authority by the Attorney General to intervene is pursuant to K.R.S. §§ 15.190, 15.200, both of which merely provide contingent and discretionary enforcement authority, *id.* (quoting *EMW*, 920 F.3d at 446 (citation modified)); and (2) Defendant's role as "chief law officer" is insufficient to fall within the *Ex parte Young* exception because of his discretion under K.R.S. § 15.020 to defend the constitutionality of Kentucky laws such as K.R.S. § 527.040(1), *id.* (citing *EMW*, 920 F.3d at 445). Accordingly, Defendant argues, "any imminent threat comes from the Commonwealth's and county attorneys and not the Attorney General." *Id.* (quoting *EMW*, 920 F.3d at 446 (citation modified)). Defendant contends that this fact, taken together with Defendant's failure to waive immunity through any other method, means Defendant is immune from suit.

In his Response, Plaintiff points to two circumstances through which Defendant admits he is authorized to enforce K.R.S. § 527.040: (1) Defendant admits he may assist County Attorneys and Commonwealth Attorneys with criminal prosecutions upon their request pursuant to K.R.S. § 15.190; and (2) Defendant admits he may prosecute criminal cases upon the request of the Governor, the President of the Senate, the Speaker of the House of Representatives, a court or grand jury of the Commonwealth, or a sheriff, mayor or city legislative body pursuant to K.R.S. § 15.200. [R. 14, p. 6]. Plaintiff argues that even though Defendant may require a third-party request before he can act to enforce K.R.S. § 527.040, this "contingent" authority is sufficient. *Id.* at 7 (collecting cases). Plaintiff next distinguishes *EMW*, which he characterizes as holding that

- 8 -

"the Attorney General's designation within [K.R.S. §] 15.020 as the 'chief law officer of the Commonwealth' does not establish enforcement authority." *Id.* at 8. Plaintiff argues *EMW* is inapposite because he does not rely on Defendant's designation under K.R.S. § 15.020 as the "chief law officer of the Commonwealth" as the basis for Defendant's authority to enforce K.R.S § 527.040; rather, appearing to backtrack from the allegations in his First Amended Complaint, Plaintiff states he relies solely on K.R.S. §§ 15.190, 15.200 instead. *Id.* According to Plaintiff, Defendant's other supporting cases are inapposite for the same reason. *See id.* at 8–9 (citing *Moravec*, 2023 WL 8241519, at *3–4). Finally, Plaintiff cites Defendant's authority to defend the constitutionality of Kentucky statutes under K.R.S. § 418.075, reasoning that this confers sufficient enforcement authority such that the *Ex parte Young* exception applies. *Id.* at 9–11.

To summarize, then, the parties appear to agree that Defendant's authority under K.R.S. § 15.020 is insufficient to meet the *Ex parte Young* exception to sovereign immunity, *see* [R. 10, p. 9]; [R. 14, pp. 8–9], but disagree as to whether Defendant's authority under K.R.S. §§ 15.190, 15.200 and K.R.S. § 418.075 is sufficient, *see* [R. 10, pp. 5–6, 10–11]; [R. 14, pp. 6–8, 9, 12]; [R. 19, pp. 6–8, 10].

The Court agrees with the parties' assessment that Defendant's authority under K.R.S. § 15.020 is insufficient to meet the *Ex parte Young* exception to sovereign immunity. The statute provides that the Attorney General is "the chief law officer of the Commonwealth" with a responsibility to "exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." K.R.S. § 15.020. In *EMW*, the Sixth Circuit made clear that "Kentucky law does not require the Attorney General to represent the Commonwealth 'where it is made the duty of the Commonwealth's attorney or county attorney' instead." 920 F.3d at 445 (citing K.R.S. § 15.020). There, because the

Sixth Circuit noted "[t]he duty to enforce [the statute] . . . lies not with the Attorney General but with the Commonwealth's attorneys and the county attorneys," the court concluded the *Ex parte Young* exception did not apply so as to permit suit against the Kentucky Attorney General. *Id.* at 445–46. Plaintiff's Response acknowledges as such, *see* [R. 14, p. 8], and this Court agrees. Because K.R.S. § 527.040(1) does not specifically delegate enforcement authority to any single state actor, K.R.S. § 15.725(1) applies instead and allocates general enforcement authority to the Commonwealth's Attorney.[3] K.R.S. §§ 15.725(1), 527.040. Therefore, the "duty to enforce" K.R.S. § 527.040(1) lies with the Commonwealth's attorneys and the county attorneys, not Defendant, meaning K.R.S. § 15.020 cannot support the application of *Ex parte Young*. *See EMW*, 920 F.3d at 445–46; *see also Moravec*, 2023 WL 8241519, at *3; *W.O. v. Beshear*, No. 3:20-cv-00023-GFVT, 2020 WL 2134088, at *2 (E.D. Ky. May 5, 2020).

In response, Plaintiff points to K.R.S. §§ 15.190, 15.200, which Plaintiff contends confer more direct enforcement powers sufficient to meet *Ex parte Young*'s requirements. [R. 14, pp. 8–9]. Caselaw undermines this argument. Plaintiff characterizes the holdings of *EMW* and *Moravec* as resting on K.R.S. § 15.020, not K.R.S. §§ 15.190, 15.200, *see id.*, but this claim misinterprets those cases. In fact, both *EMW* and *Moravec* addressed analogous statutes in factual circumstances similar to ours, and found those statutes insufficient to confer enforcement authority under *Ex parte Young*. *See EMW*, 920 F.3d at 445–46; *Moravec*, 2023 WL 8241519, at *4. In *EMW*, the Sixth Circuit addressed the Kentucky Attorney General's authority to enforce H.B. 2, a civil statute which did not delegate specific enforcement power to any single state actor and, rather, allocated the duty to enforce to the Commonwealth's and county attorneys. 920 F.3d at 445. Where the Sixth

---

[3] K.R.S. § 15.725(1) provides that "[t]he Commonwealth's attorney shall . . . have the duty to prosecute all violations whether by adults or juveniles subject to the jurisdiction of the Circuit Court of the criminal and penal laws which are to be tried in the Circuit Court in his judicial circuit." K.R.S. § 15.725(1).

Circuit determined that the *Ex parte Young* exception did not permit suit against the Attorney General, the Court emphasized the Attorney General's discretion in its reasoning, *see id.* at 445–46 (distinguishing between Kentucky law "permit[ting]" the Attorney General to act and "requr[ing] him to represent the Commonwealth), and noted that the requirement for another to request the Attorney General's intervention undermined the Attorney General's purported enforcement authority, *see id.* ("*When* [the Commonwealth's and county] attorneys fail to meet this mandate, and *if* the Department of Revenue submits a written request, *then* the Attorney General must bring an action to collect any unsatisfied judgments." (emphasis added) (citing K.R.S. § 15.060(3))). This Court made a similar point in *Moravec*, a case involving Kentucky's requirement that convicted sex offenders add themselves to a registry. 2020 WL 2134088, at *1. In ruling that *Ex parte Young* did not permit suit against the Attorney General, Judge Van Tatenhove wrote that "[a]bsent a *specific action* by the Attorney General that caused Mr. Moravec's alleged injury, the connection to General Cameron is simply too attenuated." *Id.* at *4 (emphasis added) (citing *Deters*, 92 F.3d at 1416).

Plaintiff does not dispute that K.R.S. §§ 15.190, 15.200, like the statutes at issue in *EMW* and *Moravec*, each require "a request by a third party before [the Attorney General's enforcement authority thereunder] can be invoked." [R. 14, p. 7]. The text of these statutes confirms as such. *See* K.R.S. §§ 15.190 ("County and Commonwealth attorneys may *request* in writing the assistance of the Attorney General in the conduct of any criminal investigation or proceeding. The Attorney General may take such action *as he deems appropriate* and practicable under the circumstances in the rendering of such assistance." (emphasis added)); 15.200(1) ("Whenever *requested* in writing by [various individuals or entities] . . . the Attorney General *may* intervene, participate in, or direct any investigation or criminal action, or portions thereof, within the

Commonwealth of Kentucky necessary to enforce the laws of the Commonwealth." (emphasis added)). Plaintiff therefore admits to the very fact that makes this case analogous to *EMW* and *Moravec*, and this Court sees no facts that support diverging from those cases here.

Moreover, this Court in *W.O.* specifically examined K.R.S. §§ 15.190, 15.200 in the context of a challenge to the Kentucky governor's executive orders, and rejected the idea that either statute provided sufficient enforcement authority to support and exception under *Ex parte Young* in the absence of a specific enforcement request made under the statutes. 2020 WL 2134088, at *3. The Court reasoned that the statute at issue

> does not specifically place enforcement of its provisions on any specific office, including the Attorney General. *Id.* In fact, it is the local prosecutors who have the ability and authority to prosecute a violation of the Governor's Travel Order. *See* KRS 15.725. Attorney General Cameron would only have the ability to prosecute a violation in this matter if a local prosecutor, the Governor, a court, grandy jury, sheriff, mayor, or majority of a city legislative body would request his assistance. *See* KRS §§ 15.190; 15.200. A request of this nature has yet to occur.

*W.O.*, 2020 WL 2134088, at *3.[4] As already discussed, the same is true here; K.R.S. § 527.040 does not specifically allocate enforcement authority to any office, meaning K.R.S. § 15.725 instead places such authority in the hands of local prosecutors. *See supra*. Accordingly, Defendant may prosecute a violation of K.R.S. § 527.040 *only if* one of the enumerated officials in K.R.S. §§ 15.190, 15.200 specifically requested he do so *and if* Defendant chose to exercise his discretion to act. Plaintiff's First Amended Complaint nowhere alleges that either has occurred here. *See generally* [R. 5].

---

[4] The Supreme Court of Kentucky similarly highlighted the requirement that the Attorney General be "invited" to participate in a criminal proceeding, as well as the Attorney General's discretion on whether to participate in those proceedings, albeit under differing circumstances. *See Commonwealth v. Hamilton*, 411 S.W.3d 741, 751 (Ky. 2013) ("By statute, the trial court or County and Commonwealth's attorneys could simply *invite* the Attorney General to participate in the proceedings. In accepting the *invitation*, the Attorney General may participate in whatever manner he deems appropriate, subject to the trial court's orders." (emphasis added) (citing K.R.S. §§ 15.190, 15.200)).

In sum, this case is analogous to *EMW*, *Moravec*, and *W.O.*, since K.R.S. § 527.040, by failing to specifically allocate enforcement authority to any office, leaves enforcement authority with the Commonwealth's and county attorneys pursuant to K.R.S. § 15.725. Because the duty to enforce lies with local prosecutors and not Defendant, there is no imminent threat of prosecution by Defendant through K.R.S. §§ 15.020, 15.190, or 15.200. Accordingly, Plaintiff fails to allege Defendant has a "special relation" to K.R.S. § 527.040, or that Defendant has been "expressly directed to see to its enforcement," meaning *Ex parte Young* does not apply so as to permit suit against Defendant. *Ex parte Young*, 209 U.S. at 157; *see also Russell*, 784 F.3d at 1047 ("[*Ex parte Young*] requires more than a bare connection to administering a statute."). Any enforcement authority allocated to Defendant pursuant to K.R.S. §§ 15.020, 15.190, and 15.200 is both contingent and discretionary, and Plaintiff nowhere alleges that that Defendant will exercise that contingent, discretionary authority here.

The Court next turns to Plaintiff's argument regarding his claim for declaratory relief, whereby Plaintiff claims Defendant is not immune from suit due to Defendant's ability to defend the constitutionality of state statutes. [R. 14, pp. 9–11]. This argument fares no better. Plaintiff contends that even if this Court finds he cannot seek a permanent injunction against Defendant due to Defendant's lack of enforcement authority, Plaintiff may still seek a declaratory judgment that K.R.S. § 527.040 is unconstitutional as applied to him. [R. 14, p. 11]. In arguing that Defendant is properly named in this case, Plaintiff cites Kentucky's declaratory judgment statute, K.R.S. § 418.075(1), as well as 28 U.S.C. § 2403(b). *Id.* at 12. K.R.S. § 418.075(1) provides that where constitutional challenges are raised against Kentucky laws, the Attorney General must "be served with a copy of the petition and be entitled to be heard." K.R.S. § 418.075(1). The federal statute to which Plaintiff cites, 28 U.S.C. § 2403(b), imposes similar requirements, demanding that where

- 13 -

the constitutionality of a state statute is at issue, the court "shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence . . . and for argument on the question of constitutionality." 28 U.S.C. § 2403(b). Although Plaintiff's claim that these statutes support Defendant's status as a proper party to this action is made in the context of standing, *see* [R. 14, pp. 10–15], the Court will construe Plaintiff's brief as alleging that K.R.S. § 418.075(1) confers authority such that Defendant falls within the exception of *Ex parte Young*.

Many of the cases already discussed address this claim, which fails for reasons similar to those outlined above. In *EMW*, the Sixth Circuit cited K.R.S. § 418.075 in noting that the discretionary nature of the Attorney General's involvement meant *Ex parte Young* did not apply. 920 F.3d at 445 ("Kentucky law *permits* the Attorney General to defend a statute's constitutional validity, but it also gives her or him *discretion*." (emphasis added) (citing K.R.S. § 418.075(1); *Hamilton*, 411 S.W.3d at 751)). Likewise, the Kentucky Supreme Court in *Hamilton* cited K.R.S. § 418.075 in its extensive discussion of the relationship between the Attorney General's discretion to intervene and his status as a proper party:

> [T]he Attorney General is not required by law to participate in any proceeding of which notice is received regarding a potential constitutional challenge. While it is clear that the Attorney General must be given notice, the law has never been found to say the Attorney General must then participate. All that is required is the Attorney General be given the opportunity to intervene and be heard on the matter. . . . Indeed, he is only "entitled to be heard." [(citing K.R.S. § 418.075(1))]. The courts cannot by judicial fiat simply order the Attorney General to participate and either defend or challenge the constitutionality of a particular statute. . . . The Attorney General is statutorily granted discretion, and it is improper for the court to strip that away.

411 S.W.3d at 751.

Although Plaintiff alleges—and Defendant does not dispute—that Defendant recently defended K.R.S. § 527.040's constitutionality before the Kentucky Court of Appeals in another case, *see* [R. 14, p. 10]; *see generally* [R. 19], Defendant counters that merely defending a statute's

constitutionality is far from the sort of affirmative prosecutorial efforts contemplated by *Ex parte Young*, [R. 19, p. 12]. Defendant is correct. The Sixth Circuit employed similar reasoning in *Deters*, where it noted that *Ex parte Young* requires an official "threaten and be about to commence proceedings." 92 F.3d at 1416. As already discussed, Plaintiff makes no such allegation here. *See supra*. Moreover, the *Deters* court cited to caselaw providing that an attorney general's duty to defend a state statute's constitutionality does not constitute the sort of enforcement authority that would support *Ex parte Young*. 92 F.3d at 1416 (citing *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir.1976). In that case, *Mendez*, the Second Circuit determined that although the Attorney General of New York had "a duty to support the constitutionality of challenged state statutes, and to defend actions in which the state is interested," his obligation to do so was in his capacity "as a representative of the State's interest in asserting the validity of its statutes," not as an adverse party. 530 F.2d at 460. The Attorney General was thus not a proper party because he had "no connection with the enforcement of [the state law at issue]." *Id.* More recently, the Seventh Circuit has found the same, writing that "[a]n attorney general cannot be sued simply because of his duty to support the constitutionality of a challenged state statute. . . . Instead, in order for a plaintiff to overcome the Eleventh Amendment, the attorney general must play some role in enforcing (not just defending) the complained-of statute." *Doe v. Holcomb*, 883 F.3d 971, 976–77 (7th Cir. 2018). Similarly, the Fifth Circuit has noted that *Ex parte Young* requires more than "merely the general duty to see that the laws of the state are implemented." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).

Taken together, the Court finds that Defendant's discretionary authority under K.R.S. § 418.075(1) and 28 U.S.C. § 2403(b) to defend the constitutionality of K.R.S. § 527.040 is insufficient to support the application of *Ex parte Young*. Numerous cases support this conclusion,

- 15 -

including *EMW* from the Sixth Circuit and *Hamilton* from the Kentucky Supreme Court—both finding the Attorney General's discretion key to the inapplicability of *Ex parte Young*—and *Mendez*, *Holcomb*, and *Morris* from our sister circuits—each specifically addressing the Attorney General's duty to defend a state's laws from constitutional challenge. Because *Ex parte Young* "requires more than a bare connection to administering a statute," *Russell*, 784 F.3d at 1047, and Plaintiff has not alleged any more than this "bare connection," the Court finds Defendant's Eleventh Amendment sovereign immunity remains intact.

### B. Standing

Federal district courts are courts of limited jurisdiction. "As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies." U.S. Const. art. III, § 2. Standing is necessary to satisfy Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."); *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) ("The standing doctrine is derived from the case or controversy requirement and obligates plaintiff[] to show a 'personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [his] behalf.'") (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017))). To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) 'a likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014)

(quoting *Lujan*, 504 U.S. at 560–61). Each of these elements must be satisfied for jurisdiction to exist because each represents "an 'irreducible constitutional minimum.'" *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560).

The parties' arguments regarding Plaintiff's standing hinge on the same arguments and authorities already addressed in the Court's sovereign immunity analysis. *See* [R. 10, pp. 3–9]; [R. 14, pp. 1–15]; [R. 19, pp. 1–13]. The Court finds that Plaintiff lacks standing for the same reasons *Ex parte Young* does not permit suit against Defendant. *See supra* Section III(A). As already discussed, Plaintiff alleges no injury caused by Defendant that would be redressed by a court order against Defendant. *See id.*; *see also Deters*, 92 F.3d at 1418–1425; *Moravec*, 2023 WL 8241519, at *3–4; *cf. Russell*, 784 F.3d at 1047–1050. Plaintiff therefore lacks standing to bring suit against Defendant.

## IV.    CONCLUSION

For the above-stated reasons, the Court will grant Defendant's Second Motion to Dismiss and will dismiss all claims brought by Plaintiff against Defendant. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.  Defendant Attorney General Russell Coleman's Motion to Dismiss, [R. 4], is **DENIED AS MOOT**.

2.  Defendant Attorney General Russell Coleman's Motion to Dismiss Plaintiff's First Amended Complaint, [**R. 10**], is **GRANTED**.

3.  All claims against Russell Coleman, in his official capacity as Attorney General of Kentucky, are **DISMISSED WITH PREJUDICE**.

4.  The Clerk of Court **SHALL** remove Russell Coleman, in his official capacity as Attorney General of Kentucky, as a named defendant in this case.

- 18 -

This the 8th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY